IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARTESANIAS HACIENDA REAL S.A.　:
de C.V.,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　Appellant,　　　　:　　　　CIVIL ACTION NO. 18-5553
　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
NORTH MILL CAPITAL LLC and　　:
LEISAWITZ HELLER,　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　Appellees.　　　　:

## MEMORANDUM OPINION

Smith, J.　　　　　　　　　　　　　　　　　　　　　　　　August 8, 2019

　　　This case arises from the appellees' alleged participation in a scheme to loot the assets of an indebted company, to which one appellee provided financing and the other legal services, so that the company was unable to satisfy its debts to the appellant. The litigation around this purported scheme has a nearly four-year history, including proceedings before this court, the bankruptcy court, and the court of appeals.

　　　At issue here is the appellant's appeal of the bankruptcy court's decision dismissing its claims for lack of standing. The appellant argues first that the bankruptcy court erred in holding that core jurisdiction existed over the case, and second that the bankruptcy court ignored evidence showing it has standing to assert the claims at issue. Specifically, the appellant points to its agreement with the bankruptcy trustee—encompassed in an order a different bankruptcy court judge entered—which it claims establishes that the trustee relinquished standing over the claims. Alternatively, the appellant argues that its claims are particularized to it, and thus are not claims the trustee ever had standing to bring, a position the trustee also adopted in an affidavit. The appellees respond that the bankruptcy court's decision was proper in all respects, because (1) as

this court previously held in referring the case to the bankruptcy court, bankruptcy jurisdiction exists over the claims, and (2) the appellant alleges a generalized harm that, even if true, all creditors would have suffered.

After a thorough review of the pleadings, the bankruptcy court's opinion dismissing the action, the parties' briefing, and the relevant jurisprudence, the court concludes that "related to," but not core, bankruptcy jurisdiction exists over the appellant's claims, because although the claims do not arise under the bankruptcy code or exist only in the bankruptcy context, their outcome could nevertheless have a conceivable effect on the estate. The court has therefore treated the bankruptcy court's decision as a recommendation and conducted a plenary review of the appellant's standing to assert the claims. The court holds that the bankruptcy court's standing decision was correct, because the asserted causes of actions belonged to the estate and therefore accrued to the trustee when the debtor filed for bankruptcy. This is true as a matter of law, and the trustee's conclusion to the contrary therefore does not mandate a different result. Moreover, although a trustee may relinquish certain claims to a creditor under limited circumstances, those circumstances are not present here and would only allow a creditor to seek damages on behalf of the estate in any event. Accordingly, the court will affirm the decision of the bankruptcy court.

## I.     PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

The appellant, Artesanias Hacienda Real S.A. de C.V. ("AHR"), filed a complaint against Wilton Armetale, Inc. ("Wilton" or the "Debtor") and its sole shareholder, director, and officer, Ivan Jeffery ("Jeffery" or the "Fiduciary"), on November 27, 2015, seeking a money judgment for wares it sold to Wilton for which it had not been paid. *Artesanias Hacienda Real S.A. DE C.V. v. Wilton Armetale, Inc., et al.*, Civ. A. No. 15-6350, Doc. No. 1. On April 6, 2016, the court entered summary judgment in favor of AHR and against Wilton in the amount of $900,658.17, plus

prejudgment interest.[1] *Artesanias Hacienda Real S.A. DE C.V. v. Wilton Armetale, Inc., et al.*, Civ. A. No. 15-6350, Doc. No. 20. On April 29, 2016, this court entered summary judgment in favor of AHR and against Jeffery in the amount of $900,658.17, plus interest, and ordered Jeffery to deliver to AHR's counsel all shares of stock in Wilton.[2] *Artesanias Hacienda Real S.A. DE C.V. v. Wilton Armetale, Inc., et al.*, Civ. A. No. 15-6350, Doc. No. 25. AHR recorded the April 6, 2016 order with the Lancaster County Prothonotary as a judgment lien against Wilton's Mt. Joy real estate. Amended Opening Appellate Brief of Plaintiff/Appellant Artesanias Hacienda Real S.A. de C.V. ("Am. AHR Br.") at 8, Doc. No. 14.[3]

Per the court's April 29, 2016 order, Jeffery delivered his Wilton shares to AHR's affiliate, following which the affiliate terminated Jeffery's positions with the company, installed new management, and contacted one of the appellees in this action, Leisawitz Heller—counsel to both Wilton and Jeffery—to waive attorney client privilege and demand the documents which AHR believed were necessary to enforce its lien. *Id*. at 8–9. AHR alleges that during the discovery that followed, it uncovered evidence that Jeffery, in his capacity as Wilton's sole director,

> signed [an] agreement to sell all Wilton's non-real estate assets for only $725,000 to North Mill [Capital LLC's] hand-picked liquidator Gordon Brothers, and for payment of all that $725,000 directly to North Mill, thereby leaving Wilton without funds or resources to protect its Mt. Joy real estate (which had been appraised as having an 'as is' fair market value of $895,000)[.]

*Id*. at 9–10 (internal citations omitted). AHR further alleges that Leisawitz Heller, as Wilton and Jeffery's counsel, arranged for the other appellee in this action, North Mill Capital, LLC ("North Mill"), to sign a separate agreement providing that Jeffery would receive a bribe, equal to 20% of

---

[1] Wilton did not oppose the entry of this order. *See* Order at 1–2, *Artesanias Hacienda Real S.A. DE C.V. v. Wilton Armetale, Inc., et al.*, Civ. A. No. 15-6350, Doc. No. 20.

[2] Jeffery did not oppose the entry of this order. *See* Order at 1, *Artesanias Hacienda Real S.A. DE C.V. v. Wilton Armetale, Inc., et al.*, Civ. A. No. 15-6350, Doc. No. 25.

[3] Unless otherwise specified, document numbers refer to Civil Action Number 18-5553.

the net proceeds of the real estate transaction, in exchange for approving the sale. *Id*. at 10. North Mill, again with Leisawitz Heller's assistance, then allegedly filed inflated confessions of judgment against and sought to foreclose on Wilton's real estate. *Id*. at 10–11. AHR asserts that but for the purported scheme, AHR could "have enforced its recorded judgment lien and so recovered the judgment owed [AHR] from [the] sale of Wilton's real estate." *Id*. at 12.

AHR filed a complaint regarding the above allegations against North Mill and Leisawitz Heller in a separate action on August 2, 2016. *Artesanias Hacienda Real S.A. de CV v. North Mill Capital, LLC, et al.*, Civ. A. No. 16-4197, Doc. No. 1. The next month, Wilton filed for bankruptcy. Am. AHR Br. at 13. AHR filed an amended complaint on January 3, 2017, asserting causes of action for aiding and abetting breach of fiduciary duties, conspiracy to breach fiduciary duties, conspiracy for fraudulent transfer, and conspiracy to engage in the commercially unreasonable disposition of assets. First Am. Compl. at ¶¶ 66–147, *Artesanias Hacienda Real S.A. de CV v. North Mill Capital, LLC, et al.*, Civ. A. No. 16-4197, Doc. No. 38.[4]

After receiving supplemental briefing from the parties on whether the action should be resolved independently of Wilton's bankruptcy proceedings, this court referred the case to the United States Bankruptcy Court for the Eastern District of Pennsylvania, indicating that "it appear[ed] that this matter would constitute a 'core proceeding' . . . [or a]t a minimum, [that] this matter [wa]s related to the bankruptcy proceeding [then] pending in the Bankruptcy Court." July 12, 2017 Order at 1, n.1, *Artesanias Hacienda Real S.A. de CV v. North Mill Capital, LLC, et al.*, Civ. A. No. 16-4197, Doc. No. 79 (internal citations omitted). Leisawitz Heller then sought a writ of mandamus from the Third Circuit, arguing that the case was properly before this court, because bankruptcy court jurisdiction did not exist. Petition for Writ of Mandamus, Doc. No. 6-36. North

---

[4] The first amended complaint is also located in this action at Doc. No. 6-5.

Mill filed an answer to the petition, arguing in support of the writ's issuance. Answer to Pet. for Writ of Mandamus, Doc. No. 6-37. AHR filed an opposition, arguing that Leisawitz Heller did not meet the standard for a writ of mandamus and should be estopped from arguing that bankruptcy jurisdiction did not exist because it had previously taken the opposite position before this court. Opp. of Resp't Artesanias Hacienda Real S.A. de C.V. to the Pet. of Leisawitz Heller for Writ of Mandamus, *In re: Leisawitz Heller*, No. 17-2710 (3d Cir.).[5] The Third Circuit seemingly agreed, entering an order on August 7, 2017, stating only that "[t]he foregoing petition [wa]s denied." Special App. at ECF p. 53, Doc. No. 6-1.[6]

The matter then moved forward in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The Honorable Jean K. FitzSimon dismissed the amended complaint on December 6, 2018. Bankr. Ct. Op. at 1, Doc. No. 1-1.[7] First, Judge FitzSimon held that the bankruptcy court had core jurisdiction "[b]ecause this matter involves a matter concerning the administration of the estate, or a proceeding affecting the liquidation of the assets of the estate . . . ." *Id*. at 1 n.1 (citing 28 U.S.C. § 157(b)(2)(A), (O)). Second, she held that AHR lacked standing to assert the claims, because "[a]ll of the Debtor's creditors were affected by the alleged collusion," and therefore it was for the trustee to bring any applicable causes of action. *Id*. at 5, 7.

AHR appealed the decision on December 21, 2018, challenging the bankruptcy court's holdings that bankruptcy court jurisdiction existed over the matter and that AHR lacked standing to bring the claims, as well as the resulting dismissal of the amended complaint. Notice of Appeal at 1, Doc. No. 1-1.[8] AHR filed a brief on February 17, 2019. Doc. No. 6. On March 1, 2019, North

---

[5] The parties agreed during oral argument that the appellate record would be supplemented to include this document but did not then submit it to the court.

[6] Along with its brief, AHR submitted a "Special Appendix" containing various documents. *See* Doc. No. 6-1. The Third Circuit's order is randomly included in these documents.

[7] AHR attached a copy of the opinion to its notice of appeal. The opinion starts at ECF p. 8.

[8] The notice of appeal starts at ECF p. 20.

Mill filed an emergency motion for an expedited briefing and hearing schedule and a motion to amend the record, seeking to exclude certain materials that AHR had designated in the appellate record—namely, an affidavit from AHR's counsel attaching several exhibits that he had filed with the bankruptcy court without leave ten days before oral argument—or alternatively, to supplement the record with additional materials—namely, AHR's opposition to Leisawitz Heller's petition for a writ of mandamus before the Third Circuit. Doc. No. 7. AHR filed a response in opposition to this motion on March 4, 2019. Doc. No. 9. The court held oral argument on the emergency motion on March 20, 2019, during which the parties agreed to the entry of an order in which (1) the court would strike AHR's counsel's affidavit from the appellate record, but the court would not strike the attached exhibits to the extent they were elsewhere in the record; and (b) the court would supplement the appellate record with AHR's opposition brief filed in the mandamus action. Order at 1–2, Doc. No. 12. The court also set deadlines for AHR to file an amended brief, substituting citations to the affidavit exhibits with citations to those documents elsewhere in the record, as well as for North Mill and Leisawitz Heller to file reply briefs. *Id.* at 2.

AHR filed its amended brief on March 25, 2019. Doc. No. 14. Leisawitz Heller and North Mill filed separate briefs in response on April 26, 2019. Doc. Nos. 16, 18. AHR filed replies in further support of its appeal on May 10, 2019, arguing as to North Mill that its brief should be stricken for failure to comply with the formatting requirements of Rule 8015 of the Federal Rules of Bankruptcy Procedure. Doc. Nos. 19, 20. North Mill filed a motion for leave to file a corrected appellee's brief to fix the formatting issues, which the court granted as unopposed on June 5, 2019. Doc. Nos. 22, 24. North Mill filed a corrected brief on June 5, 2019. Doc. No. 25. AHR also filed a "request to take judicial notice of proceedings in the bankruptcy court," relating to the transcript

of a May 7, 2019 hearing before Judge FitzSimon, Doc. No. 21, to which Leisawitz Heller filed an opposition. Doc. No. 23. This matter is now ripe for resolution.

## II.     DISCUSSION

### A.     <u>Standard of Review</u>

Generally, on appeal from a final order entered by a bankruptcy court, the district court reviews the order using the traditional standards of review: Regarding the bankruptcy court's legal conclusions, the district court reviews those conclusions *de novo*. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998) (citation omitted). The court reviews the bankruptcy court's findings of fact to examine whether they are "clearly erroneous." *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999) (quoting *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 635 (3d Cir. 1998)). However, although the bankruptcy decision here was framed as a final order, as discussed below, this court concludes that the bankruptcy court only had "related to" jurisdiction. Therefore, the court conducts a plenary review of all findings in light of AHR's objections and treats all holdings as recommendations, rather than conclusions. *See* 28 U.S.C. § 157(c)(1) (stating that under "related to" jurisdiction, bankruptcy court "submit[s] proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and reviewing de novo those matters to which any party has timely and specifically objected."); *see also In re Montgomery Ward & Co., Inc.*, 428 F.3d 154, 160 n.12 (3d Cir. 2005) ("The bankruptcy court makes final decisions in core matters which can be appealed to the district court. But in non-core cases the bankruptcy court can make only recommendations to the district court.").

**Bankruptcy Court Jurisdiction**[9]

AHR first argues that the bankruptcy court lacked jurisdiction over the claims at issue. Am. AHR Br. at 35–40. Bankruptcy courts have jurisdiction over "core" proceedings or matters "related to" a bankruptcy proceeding. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004). In the Third Circuit, courts follow a two-step test to determine whether a claim is a core proceeding. First, the court considers whether the claim falls under the "illustrative list" in 28 U.S.C. § 157(b). *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). If so, the court then applies the core proceeding test: "[A] proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.* (alterations in original) (quotation marks and citations omitted).

Even if a matter does not meet the requirements for core jurisdiction, it is nonetheless "related to" the bankruptcy proceedings if the "proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 837 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)). A plaintiff's claims "need not necessarily be against the debtor or against the debtor's property" to be "related to" the bankruptcy, so long as they "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) [or could] in any way

---

[9] Both AHR and North Mill argue that opposing counsel should be estopped from making certain jurisdictional arguments because of statements they previously made before this court and before the Third Circuit in the mandamus proceedings. Reply Br. of Pl./Appellant Artesanias Hacienda Real S.A. de C.V. to the Opp'n Br. of Def./Appellee Leisawitz Heller at 20–23, Doc. No. 19; Reply Br. of Pl./Appellant Artesanias Hacienda Real S.A. de C.V. to the Opp'n Br. of Def./Appellee North Mill Capital LLC at 16–19, Doc. No. 20; Corrected Br. of Appellee North Mill Capital LLC at 21–25, Doc. No. 25. Whether or not bankruptcy jurisdiction exists over these claims is a question of law that the court decides on the basis of the relevant jurisprudence, rather than any of the representations or positions of the parties. *See In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 263 n.2 ("Whether or not jurisdiction exists is a question of law subject to plenary review . . . ." (citation omitted)). Even if the parties were theoretically estopped from making certain legal arguments, the court would not, of course, be estopped from reaching the correct result on the basis that the party supporting that position previously adopted an inconsistent position.

impact[] upon the handling and administration of the bankrupt estate." *Pacor, Inc.*, 743 F.2d at 994; *cf. Saul, Ewing, Remick & Saul v. Provident Savings Bank*, 190 B.R. 771, 775 (D. Del. 1996) ("*Saul*") ("Therefore, disputes between parties other than the debtor generally do not invoke the court's 'related to' jurisdiction of § 1334 *unless the action would have some effect on the bankruptcy estate*." (emphasis added)).

The fact that a plaintiff commenced the action before the debtor filed for bankruptcy does not foreclose the existence of bankruptcy jurisdiction. *See Pacor, Inc.*, 743 F.2d at 986 (plaintiffs' suit preceded chapter 11 petition); *In re United Stairs Corp.*, 176 B.R. 359, 363–64 (Bankr. D.N.J. 1995) (plaintiffs' suit preceded chapter 7 petition). Indeed, Federal Rule of Bankruptcy Procedure 9027 explicitly provides for removal to the Bankruptcy Court of "civil action[s] initiated before commencement of the case under the [Bankruptcy] Code." Fed. R. Bankr. P. 9027(a)(2) (emphasis omitted). The court considers all claims separately to determine whether bankruptcy jurisdiction exists over each claim. *See Halper*, 164 F.3d at 839 (adopting "claim-by-claim approach" to assessing bankruptcy jurisdiction).

AHR brought six claims against North Mill and Leisawitz Heller: (1) aiding and abetting breach of fiduciary duties owed AHR as a creditor of insolvent corporation Wilton against North Mill; (2) the same claim against Leisawitz Heller; (3) conspiracy to breach fiduciary duties owed insolvent corporation Wilton and its creditor AHR against both defendants; (4) fraudulent transfer against both defendants; (5) conspiracy for fraudulent transfer against both defendants; (6) conspiracy to engage in the commercially unreasonable disposition of the Debtor's assets against both defendants. First Am. Compl. at ¶¶ 66—147. The court assesses each claim separately for jurisdictional purposes. *Harper*, 164 F.3d at 839.

1.      **Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty Claims**

Courts disagree about whether breach of fiduciary duty claims fall under a bankruptcy court's core jurisdiction or are more appropriately treated as "related" claims. In *In re South Canaan Cellular Investments, LLC*, the court held that core jurisdiction existed over the debtor's claims that a creditor aided and abetted its shareholder's breach of fiduciary duty as "part of the claims allowance process that could only occur in this bankruptcy case." 427 B.R. 85, 92 (Bankr. E.D. Pa. 2010) (citations omitted). The court then found it had "related to" jurisdiction over the debtor's breach of fiduciary claims against its shareholder, because "the relief requested include[d] a demand for damages and for equitable relief that, if successful, would increase the assets of the bankruptcy estate available for distribution." *Id*. at 92 (citing *Matter of Delaware & Hudson Ry. Co.*, 122 B.R. 887, 894–95 (D. Del. 1991); *In re Jamuna Real Estate, LLC*, 357 B.R. 324, 336 (Bankr. E.D. Pa. 2006)).

In contrast, the Bankruptcy Court for the District of Delaware held in *In re Allied Systems Holdings, Inc.*, "[i]ndeed, the overwhelming majority of courts in this district and other districts conclude that breach of fiduciary claims do not involve the application of bankruptcy law, are ordinary state law causes of action, and could proceed outside the bankruptcy court." 524 B.R. 598, 606 (2015) (footnote omitted). However, the court went on to find that although core jurisdiction did not exist, "related to" jurisdiction allowed the court to hear the claims because "if the [Unsecured Creditors'] Committee is successful on its claims, it could conceivably increase the size of the estate." *Id*. at 607 (footnote omitted); *see also In re Zhejiang Topoint Photovoltaic Co., Ltd.*, Case No. 14-24549 (JNP), 2017 WL 6539481, at *3 (Bankr. D.N.J. 2017) (holding that core jurisdiction did not apply to breach of fiduciary duty claims because action did not arise under

Chapter 11, but "related to" jurisdiction existed because success on claims "would result in a larger distribution to creditors"); *In re Domiano*, 422 B.R. 497, 500 (Bankr. M.D. Pa. 2009) (holding, without explanation, that "related to" jurisdiction existed over debtor's breach of fiduciary duties claims against creditor); *In re Jamuna Real Estate, LLC*, 357 B.R. at 336 ("While the Third Circuit has not had occasion to decide whether such claims are core or not, the majority of courts which addressed the question have held that a cause of action for breach of fiduciary duty is a non-core, related proceeding." (collecting cases)).

This court likewise follows that approach and deems the breach of fiduciary duty and related aiding and abetting claims to be related, non-core claims. Although the claims are not listed under § 157(b), do not invoke a substantive right under Title 11, and are not the sort of claims that could only arise in the context of a bankruptcy case, as explained further below, the damages AHR seeks would belong to the estate, and therefore increase the pool of assets available to satisfy the outstanding liabilities owed to all creditors.

### 2.    Fraudulent Transfer Claims

AHR asserts fraudulent transfer and conspiracy to commit fraudulent transfer claims under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"). First Am. Compl. at ¶¶ 102–134. Essentially, AHR asks the court to avoid the purportedly fraudulent transfer, either by invalidating North Mill's lien or by awarding damages commensurate with the value of the transferred property.

A bankruptcy trustee may "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under" other sections of the Bankruptcy Code. 11 U.S.C. § 544(b)(1).[10] This "allows the bankruptcy trustee to stand in the shoes of an actual creditor who

---

[10] The court recognizes that AHR is a secured creditor because of its lien on the Mt. Joy real estate. However, § 544(b)(1) asks whether the "applicable law" would allow a hypothetical unsecured creditor to seek relief, not

may avoid a transfer under applicable nonbankruptcy law," including the PUFTA. *In re Polichuk*, 506 B.R. 405, 417 (Bankr. E.D. Pa. 2014) (citation and footnote omitted); *see also In re Int'l Auction and Appraisal Servs. LLC*, 493 B.R. 460, 463 (Bankr. M.D. Pa. 2013) ("Section 544 enables a trustee to use state law to avoid any transfer that an unsecured creditor could have avoided outside of bankruptcy."); *In re Titus*, 467 B.R. 592, 600 (Bankr. W.D. Pa. 2012) ("The fraudulent transfer action includes three counts and is pursued pursuant to Pennsylvania state fraudulent transfer law via 11 U.S.C. § 544(b)(1)."), *vacated in part on other grounds, Titus v. Shearer*, 498 B.R. 508 (W.D. Pa. 2013).

In *In re Rosenblum*, the court held that "related to" jurisdiction applied to PUFTA claims, reasoning that,

> [g]iven the broad definition of 'related to,' it is clear that an action to address the PUFTA Claims under § 544(b) is related to the Debtor's bankruptcy proceeding because the outcome of such litigation could conceivably have an effect on the administration of the Debtor's bankruptcy estate. If successful, the fraudulently transferred assets (or the value thereof) would be added to the Debtor's estate and become available for distribution to the Debtor's creditors.

545 B.R. 846, 855 (Bankr. E.D. Pa. 2016). Other courts in the Third Circuit have concluded that a fraudulent transfer action is a core matter and assessed whether the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), nonetheless prevents bankruptcy courts from entering a final judgment in such a case. *Compare In re Int'l Auction and Appraisal Servs. LLC*, 493 B.R. at 465 (holding PUFTA claims brought under section 544(b) were core matters, but bankruptcy court could not enter final order under *Stern*) *with In re Titus*, 467 B.R. at 633 ("[N]otwithstanding *Stern*, a bankruptcy court possesses the constitutional authority to enter a final decision regarding a

---

whether the creditor seeking relief is secured or unsecured. *See* 12 Pa. C.S. § 5101(b) (defining "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured").

fraudulent transfer action that is brought pursuant to state law by way of § 544(b)(1)." (citation omitted)).

That said, neither AHR nor the court in its own research has identified any caselaw holding the bankruptcy court lacks jurisdiction entirely in a fraudulent transfer action. Instead, even the more conservative cases hold only that the bankruptcy court cannot come to a final judgment; the bankruptcy court can make recommended findings for the district court's ultimate resolution, as in cases where the bankruptcy court only has "related to" jurisdiction. *In re Titus*, 467 B.R. at 633 ("As the Court understands it, these litigants argue only that this Court lacks the constitutional authority to enter a final decision in a fraudulent transfer action brought under state law via § 544(b)(1), not that this Court lacks subject matter jurisdiction altogether regarding such action."); *In re Universal Marketing, Inc.*, 459 B.R. 573, 577 ("In other words, *Stern* does not affect the exercise of federal bankruptcy jurisdiction to hear certain claims, but simply whether the authority to enter a final order resides in the district court or the bankruptcy court."). Thus, this court again elects to take the more conservative approach and conduct a plenary review of the bankruptcy court's findings, either because only "related to" jurisdiction applies or because the Constitution requires an Article III judge to make the ultimate decision under *Stern*.

### 3.     Conspiracy to Engage in Commercially Unreasonable Disposition of Debtor's Assets Claims

Lastly, AHR asserts a claim for conspiracy to engage in a commercially unreasonable disposition of the Debtor's non-real estate assets under Division 9 of the Pennsylvania Uniform Commercial Code ("Pa. U.C.C."), 13 Pa. C.S. §§ 9607 and 9610. First Am. Compl. at ¶¶ 135–147. Section 9607(c) requires a secured party to "proceed in a commercially reasonable manner" when it "(1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and (2) is entitled to charge back uncollected collateral or otherwise to full

or limited recourse against the debtor or a secondary obligor." 13 Pa. C.S. § 9607(c). Section 9610 mandates that "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, [] be commercially reasonable." 13 Pa. C.S. § 9610(b). If a secured creditor disposes of the collateral in a commercially unreasonable manner in violation of the Pa. U.C.C., its "failure to establish commercial reasonableness of the resale price creates a presumption that the value of the collateral equaled the indebtedness secured, thereby extinguishing the indebtedness unless the secured party rebuts the presumption." *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1306–07 (3d Cir. 1986) ("*Tabor Court*") (quoting *Savoy v. Beneficial Consumer Disc. Co.*, 468 A.2d 465, 467 (Pa. 1983)).

Undoubtedly then, an action under the Pa. U.C.C. may "conceivably have an[] effect on the estate being administered in bankruptcy," and therefore "related to" jurisdiction exists over such a claim. *Pacor, Inc.*, 743 F.2d at 994 (emphasis and citations omitted). Where a plaintiff succeeds on such a claim, the court no longer recognizes the commercially unreasonable actor as a creditor entitled to any of the estate's assets, thereby leaving those assets to be distributed to the other creditors. *Tabor Court*, 803 F.2d at 1307 ("*Savoy* requires that we reverse the district court's decision . . . to the extent that it recognizes [the commercially unreasonable actor's] status as a creditor as against the trustee in bankruptcy."). Indeed, if North Mill did, in fact, dispose of the non-real estate assets unreasonably, as AHR alleges, North Mill's claimed remaining debts would be extinguished. Were that to occur, North Mill's rights to the Mt. Joy real estate would be eliminated, and AHR and any other creditors would be able to use the real estate as an asset to satisfy their own debts. Thus, there can be no question that, at a minimum, "related to" jurisdiction exists over AHR's final claim.

#### 4.      AHR's Generalized Jurisdiction Arguments

AHR does not evaluate the bankruptcy court's jurisdiction on a claim-by-claim basis but instead offers generalized arguments about why jurisdiction does not exist over a case such as this. Am. AHR Br. at 35–42. First, AHR argues that its claims against North Mill and Leisawitz Heller constitute a "[d]ispute[] among creditors with respect to their competing claims and liens," and thus fall outside of the bankruptcy court's jurisdiction. AHR's Am. Brief at 36. AHR relies on *In re Dryden Advisory Grp., LLC*, 534 B.R. 612, 627 (Bankr. M.D. Pa. 2015) ("*In re Dryden*") for this argument, but it overstates the holding in that case. *See* Am. AHR Br. at 36–37 (stating that *In re Dryden* holds "a bankruptcy court does not have jurisdiction to determine [the] validity, extent and priority of competing liens of creditors in litigation before the federal district court[].").
Under *In re Dryden* and the cases that preceded it, bankruptcy court jurisdiction does not apply to mere disputes about the priority of different creditors' claims. *See In re Dryden*, 534 B.R. at 627 ("Courts frequently have held that disputes among creditors about the priorities of their claims against a debtor are not within a bankruptcy court's jurisdiction." (citing *Saul*, 190 B.R. at 775)). To put it differently, a bankruptcy court does not have "related to" jurisdiction over a case that merely asks whether one creditor should be paid before another.

But regardless of how AHR and the trustee[11] now seek to characterize the allegations against North Mill and Leisawitz Heller, the first amended complaint makes clear that this is not merely a dispute about the priority of competing creditors' claims. AHR is not simply arguing that its lien should have a higher priority than the appellees' lien (indeed, only North Mill, not Leisawitz Heller, even has a competing claim against the estate). Rather, it alleges that both appellees

---

[11] In his affidavit, the trustee repeats AHR's claim that this case is about the "validity, amount, priority and enforceability of North Mill's confessed judgments and purported lien on Wilton's real estate . . . ." Aff. of David A. Eisenberg ("Trustee's Aff.") at ¶ 15, Doc. No. 6-41.

engaged in a fraudulent scheme to loot the estate's assets in conspiracy with the Fiduciary, for which North Mill's lien should be entirely extinguished and both it and Leisawitz Heller should have to pay significant monetary damages. *See* First Am. Compl. at ¶¶ 66–147. Indeed, the very first sentence of AHR's amended brief states that it was "the victim of a commercial and criminal bribery transaction, arranged by defendant Leisawitz Heller and entered into by defendant [North Mill], which deprived [it] of the benefit of its rights under this Court's [judgment against Wilton and lien on the Mt. Joy real estate]." Am. AHR Br. at 1. AHR does not just seek an order declaring North Mill's liens are subordinate to its own, but also an order entirely invalidating and vacating North Mill's liens, as well as almost $2 million in compensatory and punitive damages for each claim (damages, incidentally, which AHR has agreed to deduct from the claims it makes against the estate).[12] *See* June 6, 2018 Stipulation and Consent Order Resolving Resp. to Proposed Abandonment Order ("Abandonment Order") at ¶ 3, Doc. No. 6-39 (stating that any damages AHR recovers in action against North Mill or Leisawitz Heller "w[ould] be deducted from the proofs of claim filed by [AHR] in both the Wilton and Jeffery bankruptcy cases on a dollar for dollar basis").[13]

Moreover, the courts held that bankruptcy jurisdiction did not exist over the claims in *In re Dryden* and *Saul* because they involved claims to property that were not part of the respective estates, not because the complaints only sought to resolve disputes about lien priority. *See In re Dryden*, 534 B.R. at 627 ("Accordingly, because the disputed accounts were sold to Durham well before the bankruptcy petition was filed, they are not property of the estate under 11 U.S.C. §

---

[12] The trustee omits all reference to AHR's claims for monetary damages in his description of the relief sought in this action. *See* Trustee's Aff. at ¶ 14 (describing only demands for declaratory judgment).

[13] AHR quotes *Nuveen Municipal Trust v. WithumSmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012), "If a creditor's recovery from a non-debtor definitely will not affect the amount of its payment from a bankruptcy estate, the third-party action is not 'related to' the bankruptcy proceeding." Reply Br. of Pl./Appellant Artesanias Hacienda Real S.A. de C.V. to the Opp'n Br. of Def./Appellee Leisawitz Heller at 23. It makes no effort to reconcile that holding with the fact that it has agreed to deduct the funds recovered here from its claims on the estate.

541(a) and disputes about the relative interests of Beneficial, Citibank, and Durham in the accounts are beyond this Court's jurisdiction."); *Saul*, 190 B.R. at 776 ("The property at stake was therefore not part of the bankruptcy estate at the time the bankruptcy action was commenced, on February 2, 1995. Since the property in dispute was not part of the bankruptcy estate on that date, 'related to' jurisdiction is lacking."). "However, if the civil action pertains to the property of the bankruptcy estate, courts have found 'related to' jurisdiction." *Saul*, 190 B.R. at 775. As explained in detail below, any applicable causes of action stemming from the purported looting scheme would be property of the estate, meaning any damages recovered in such actions would be payable to the estate for distribution to all its creditors. These causes of action arose when the purportedly improper activity took place, *i.e.*, before Wilton filed for bankruptcy, and therefore are property of the estate, over which the bankruptcy court has jurisdiction. *See In re Jones*, 396 B.R. 638, 647 (Bankr. W.D. Pa. 2008) ("A cause of action becomes property of a bankruptcy estate if: (1) the cause of action arose prior to the commencement of the bankruptcy case; and (2) the debtor could have asserted the cause of action prior to the commencement of the bankruptcy case." (citing *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5 (3d Cir. 2002)). Of course, it was Wilton's own assets that the appellees reportedly looted, and Wilton would have been well within its rights to file suit against the purported wrongdoers to seek recovery of the assets or damages prior to its bankruptcy.

Next, AHR argues that bankruptcy court jurisdiction does not exist over claims specific to a particular creditor. Am. AHR Br. at 37.[14] AHR cites to *In re Passodelis*, in which the Bankruptcy

---

[14] AHR first cites to *In re Emoral* and *In re Caribbean Petroleum Corp.* for that proposition, Am. AHR Br. at 37, but neither of those cases found that the bankruptcy court lacked jurisdiction. *See In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (stating that district court had jurisdiction to review bankruptcy court's decision under 28 U.S.C. § 158(a) and not evaluating whether bankruptcy court had jurisdiction); *In re Caribbean Petroleum Corp.*, 512 B.R. 774, 777 (Bankr. D. Del. 2014) ("[T]he Court is therefore satisfied that it has jurisdiction to make the assessment."). Rather, those decisions dealt with whether the claims at issue were property of the bankruptcy estate, and the court therefore discusses them in the standing section below.

Court for the Western District of Pennsylvania held it had jurisdiction over the plaintiffs' claims for fraud, conversion, and unfair trade practice but did not have jurisdiction over claims for negligence, breach of contract, and conspiracy. 234 B.R. 52, 57, 63 (Bankr. W.D. Pa. 1999). In finding it lacked jurisdiction over the latter claims, the bankruptcy court relied on the fact that "the Court c[ould not] identify a conceivable effect that [the claims] could have upon the instant debtor's bankruptcy estate." *Id*. at 63. This was particularly true as to the conspiracy claim, because the plaintiffs "tardily filed their proofs of claim," and so the outcome of the claim "could not conceivably result in the liquidation of any allowed claim for the purpose of either plan distribution or participation in the Chapter 11 voting process." *Id*. at 64 (footnote omitted). As discussed above, the claims here would have a conceivable effect on the estate, and these cases are therefore inapposite to the court's analysis.

AHR then asserts, "the bankruptcy court does not have jurisdiction in a dispute between creditors and non-debtors who participated in debtor's misconduct against [the] creditor (whether as aiders and abettors, conspirators or otherwise)." Am. AHR Br. at 38. But the case AHR claims supports this assertion does not involve the debtor's misconduct at all. Instead, *In re Summit Airlines, Inc.*, 160 B.R. 911, 913–14 (Bankr. E.D. Pa. 1993) ("*In re Summit*"), addressed who should be responsible for a lawyer's embezzlement of funds from the estate of a debtor, to which the lawyer served as counsel in its bankruptcy proceedings. The plaintiff, a committee of unsecured creditors of the debtor, sought damages from the lawyer's two employer firms, one of which filed a third-party complaint against the bank where the lawyer held accounts used to embezzle funds, arguing that "the 'ultimate liability' for [the lawyer's] illegal actions rested not with the [law firm], but with [the bank]." *Id*. at 915. The court agreed with the bank that it lacked jurisdiction because the law firm's claims against it "ha[d] no effect upon the Debtor's rights and liabilities." *Id*. at 922.

Instead, those claims "[we]re confined to the alleged liability of [the bank] with or over to the [law firm] in light of the [law firm's] established liability for the embezzlement of the Debtor's funds by [the lawyer]." *Id*. In other words, there was no question that the estate was entitled to payment for the lawyer's wrongdoing; the only question was whether that payment should come from the law firm or the bank.

Here, in contrast, resolution of AHR's claims would undoubtedly require the court to determine whether the estate is entitled to damages for the appellees' purported wrongdoing; the question is not who must pay the estate but instead whether the estate is entitled to payment at all. Also, unlike in *In re Summit*, the claims here arise from purported misconduct by another creditor of the estate. If such claims were successful, North Mill's claims against the estate would be eliminated and it would potentially have to return certain assets—or the equivalent value of those assets—to the estate, which could then be distributed to other creditors. Again, such a result would undoubtedly have a conceivable effect on the estate.

AHR then cites to cases addressing a defendant's indemnification claims against a third-party defendant. In *Pacor, Inc.*, a married couple sought damages for injuries suffered from the husband's work-place exposure to asbestos, which the defendant had provided. 743 F.2d at 986. The defendant filed a third-party complaint against the company it claimed originally manufactured the asbestos, which was in bankruptcy proceedings at the time. *Id*. The Third Circuit held that the plaintiffs' lawsuit against the defendant "would have no effect on the [third-party defendant's] bankruptcy estate, and therefore [wa]s not 'related to' [the] bankruptcy within the meaning of section 1471(b)." *Id*. at 995. If anything, the Third Circuit reasoned, the dispute between the defendant and the original manufacturer was "a mere precursor to the potential third party claim for indemnification by [the defendant] against [the original manufacturer]." *Id*.

Likewise, in *In re: Green Field Energy Services, Inc.*, the court addressed the defendant's motion for leave to file a third-party complaint seeking contribution from the defendant's own alleged aider and abettor. 554 B.R. 315 (Bankr. D. Del. 2016). Aside from the fact that the case involved "claims of non-debtors brought against other non-debtors who did not even file proofs of claim in the bankruptcy case," *id*. at 319, the court applied an entirely different standard than the one employed for normal "related to" jurisdiction, because the claims arose post-confirmation. *Id*. at 319–20 (describing Third Circuit's "close nexus" test to be applied post-plan-confirmation and applying to plaintiffs' claims).[15] Here, the question is not whether a third-party may be obligated to indemnify the appellees for damages somehow tied to the estate at some unspecified point down the line, but rather whether the appellees engaged in wrongdoing that would entitle the estate to damages right now. Thus again, the claims are "related to" the administration of the bankruptcy estate, and bankruptcy court jurisdiction exists.

## C. Standing

### 1. Standing Over Claims That the Estate Could Have Brought on its Own Behalf

Because the bankruptcy court only had "related to," rather than core, jurisdiction over AHR's claims, the court treats its conclusions as proposed findings and conducts its own plenary review of whether AHR had standing to assert any of the claims. *See In re Winstar Commc'ns., Inc.*, 554 F.3d 382, 406 (3d Cir. 2009) (affirming judgment where district court conducted plenary review of findings on claims over which bankruptcy court possibly only had "related to" jurisdiction).

---

[15] The final contribution case AHR cites, *Forcine Concrete & Construction Co., Inc. v. Manning Equipment Sales & Serv.*, 426 B.R. 520 (E.D. Pa. 2010), addressed whether claims against the defendants, employees of the debtor, would be stayed pending resolution of the bankruptcy proceedings, because the debtor would potentially have to indemnify the defendants if they were deemed liable. *Id*. at 523. The court's only reference to jurisdiction was that the parties did not contest that diversity jurisdiction existed. *Id*. at 522 n.3.

Once a company is in bankruptcy, "creditors lack standing to assert claims that are property of the estate[, which] . . . includes all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Emoral, Inc.*, 740 F.3d at 879 (internal quotation marks and citations omitted). Put another way, "where a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Id.* (internal quotation marks and citation omitted). Of course, any creditor stands to benefit when a claim will potentially increase the pool of assets available to the estate. However,

> [i]t is not enough to establish that a recovery will yield a benefit to the creditor. To the contrary, a direct claim requires proof that the creditor's injury is unique and unrelated to any damage sustained by the corporation or other creditors. In a liquidation, the mere fact that a successful outcome may increase the amount available for distribution to creditors does not transform a claim that otherwise belongs to the corporation into one that can be separately maintained by each creditor.

*In re Bruno*, 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016); *see also In re Bane*, 426 B.R. 152, 158–59 (Bankr. W.D. Pa. 2010) (holding that to overcome standing challenge, creditor must "demonstrate that it has suffered an injury that is distinct from injuries that may have been suffered generally by the entire creditor body of [the debtor] after it became insolvent, that is injuries that are *distinct from an injury to [the debtor's] corporate assets*." (emphasis added)). To determine whether a claim is general or particularized, the court considers "the nature of the cause of action itself." *In re Emoral, Inc.*, 740 F.3d at 879.[16]

---

[16] In *In re Emoral, Inc.*, the Third Circuit held that the plaintiffs' personal injury successor liability claims were general in nature, because all creditors would benefit from a holding that the defendant had succeeded to the debtor's liabilities. *Id.* at 880. In contrast, the Bankruptcy Court for the District of Delaware held the plaintiff creditors' claims were particularized to them in *In re Caribbean Petroleum Corp.*, because only they "ha[d] an interest in the personal injury claims," and recovery of any such claims could not benefit any other creditor. 512 B.R. at 780.

AHR cites to *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008) ("*In re Seven Seas*"), which it claims held that "bondholders' state law claims against [the] secured creditor for conspiracy and aiding and abetting [the] debtor's fraud did not belong to [the] bankruptcy estate and were properly asserted outside [of the] bankruptcy court."[17] Am. AHR Br. at 38 n.8. But in that case, it was the creditors themselves whom the defendants allegedly directly defrauded, not the debtor or its assets. Specifically, the Fifth Circuit concluded that the debtor company could not have asserted the plaintiffs' claims for fraud, aiding and abetting fraud, and conspiracy to commit fraud, because the heart of the allegations was that the defendants specifically sought to induce the plaintiffs—not the debtor—to rely on their misrepresentations concerning a notes issuance. *Id.* at 586–87.[18] The court went on to discuss the differences between claims that a creditor generally could bring outside of bankruptcy and claims that only the trustee can bring in bankruptcy:

> [S]ome claims that are usually brought by creditors outside of bankruptcy (and thus in a sense may be said to "belong to" the creditors and not the debtor) are nonetheless vested exclusively in the trustee in bankruptcy. This is so not merely because the claims are common to a number of creditors, but because they ultimately seek to recover assets of the estate that are not under the debtor's control—by reason of a fraudulent transfer, for instance, or because of the existence of separate corporate entities that are a sham. This much is made clear by our subsequent explanation [in *In re Schimmelpenninck*, 183 F.3d 347, 360 (5th Cir. 1999)] that "[a]s not all claims necessarily 'belong to' the debtor—because either by statute or common law the debtor is precluded from asserting the action—another mechanism must exist to prevent individual creditors from annexing assets of the estate to gain an advantage."

*Id.* at 589 (second alteration in original) (footnote omitted). The court went on in a footnote to characterize fraudulent transfer claims as "the paradigmatic example of a claim that is 'general' to

---

[17] AHR discusses *In re Seven Seas* in the jurisdiction section of its brief, but the court elects to discuss it here, because the Fifth Circuit based its jurisdiction analysis entirely on whether the plaintiffs' claims belonged to the estate. *See* 522 F.3d at 584 ("If the claims belong to the estate, then it was not error for the bankruptcy court to deny remand (because it has jurisdiction over all property of the estate) . . . .").

[18] The Fifth Circuit applied the same test that the Third Circuit applied in *In re Emoral, Inc. See id.* ("Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case." (citations omitted)).

all creditors" because "[i]t is normally the debtor's creditors, and not the debtor itself, that have the right to assert a fraudulent transfer claim outside of bankruptcy, but in bankruptcy such a claim is usually brought by the trustee, for the benefit of all creditors." *Id.* at 589 n.9.

Applying the *In re Emoral, Inc.* (and the virtually identical *In re Seven Seas*) standard here, Wilton could have asserted the breach of fiduciary duty and Pa. U.C.C. claims on its own behalf. *See Reis v. Barley, Snyder, Senft & Cohen LLC*, 667 F. Supp. 2d 471, 492 (E.D. Pa. 2009) ("[The director] owed fiduciary duties to the corporation."); 13 Pa. C.S. § 9625 ("[A] person that, at the time of the failure [under the Pa. U.C.C.] was *a debtor*, was an obligor or held a security interest or other lien on the collateral may recover damages . . . ." (emphasis added)). Likewise, the fraudulent transfer claims fall explicitly under the Fifth Circuit's description of the "paradigmatic example" of a claim that technically belongs to creditors but is more properly within the trustee's province to assert, *In re Seven Seas*, 522 F.3d at 589 n.9, and courts in the Third Circuit have agreed that in the bankruptcy context, it is for the trustee—not an individual creditor—to bring a fraudulent transfer claim, barring extenuating circumstances discussed further below. *See In re Rosenblum*, 545 B.R. at 853 ("The Court has further concluded that the Trustee has exclusive standing to file avoidance actions under § 544(b)."); *In re Council*, Civ. A. No. 06-1537, 2006 WL 3060752, at *3 (E.D. Pa. Oct. 27, 2006) (holding trustees have exclusive power to bring avoidance actions under bankruptcy code).

This is especially true as to the breach of fiduciary duty claims. As AHR itself acknowledges, it only has the right to bring claims stemming from the purported breach of fiduciary duties to Wilton because the company was insolvent. *See* First Am. Compl. at ¶ 67 ("Upon a Pennsylvania corporation (such as Wilton) becoming and so long as the corporation remains insolvent, the fiduciary duties of the insolvent corporation's directors, officers, and

controlling shareholders (including, among other things, their duties of care and loyalty) extend to creditors of the corporation." (citations omitted)). Of course, under general circumstances, a fiduciary owes duties exclusively to the company, not its creditors. *See In re Forman Enters., Inc.*, 281 B.R. 600, 610 (Bankr. W.D. Pa. 2002) (stating that fiduciary duties are owed "to the corporation and may be enforced directly by the corporation or indirectly by a shareholder in a shareholder derivative action brought under the right of the corporation"). However, "Pennsylvania courts have carved out an exception where a corporation is insolvent. Directors of an insolvent corporation hold their powers 'in trust' for all creditors of the corporation. They may not use their powers for their own benefit and to the detriment of creditors." *In re Insulfoams, Inc.*, 184 B.R. 694, 703–04 (Bankr. W.D. Pa. 1995) (citations omitted). When that exception applies, the creditor brings a breach of fiduciary duty claim on behalf of the debtor corporation, not itself. *See In re Bruno*, 553 B.R. at 286 n.39 (looking to Delaware law to hold "creditors of an insolvent corporation are precluded from asserting direct claims against the corporate directors for a breach of their fiduciary duties. Instead, creditors may pursue derivative claims on behalf of the insolvent corporation or they may assert any nonfiduciary claims") (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalia*, 930 A.2d 92, 103 (Del. 2007)).[19]

It follows that once the insolvent company goes into bankruptcy, it is for the trustee—not an individual creditor—to bring any applicable breach of fiduciary duty claims on its behalf. *See In re Covenant Partners, L.P.*, Bankr. No. 14-17568, 2017 WL 1532548, at *2–3 (Bankr. E.D. Pa.

---

[19] In *In re Bruno*, the Bankruptcy Court for the Western District of Pennsylvania recognized the logic of the Delaware Supreme Court's holding that a creditor's breach of fiduciary duty claim is necessarily derivative of the debtor corporation's rights, which "avoid[s] the uncertainty that might exist if directors were forced to balance the competing fiduciary duties owed to the corporation, the creditor body as a whole, and the specific demands of individual creditors." *Id.*; *see also In re Our Alchemy, LLC*, Case No. 16-11596 (KG), 2017 WL 3037445, at *4 (Bankr. D. Del. July 17, 2017) ("[Plaintiff] argues that this is not a general claim, and thus not derivative. Yet, while [plaintiff] alleges losses it individually incurred, the conduct complained of is the alleged breach of the Trustee's duty to the Debtor's creditors." (citation omitted)).

Apr. 25, 2017) ("Because the alleged misconduct harmed all of the Debtor's Limited Partners, any recovery on those claims would be shared by all of them, making the claim derivative . . . . Thus, it is the Trustee who has standing to liquidate the claims of breach of fiduciary duty against the Debtor's general partners." (citation omitted)); *In re Bane*, 426 B.R. 152, 159 (Bankr. W.D. Pa. 2010) ("Because the court holds that [the creditor's] breach of fiduciary duty claim was, with respect to [the creditor], derivative in nature immediately prior to when [the debtor] filed for bankruptcy, . . . [the debtor's] Chapter 7 Trustee automatically succeeded to sole ownership of such claim when [the debtor] filed for bankruptcy." (citations omitted)); *In re Insulfoams, Inc.*, 184 B.R. at 703–04 ("Recovery in such instances [where directors of the debtor corporation breach their fiduciary duties] may be enforced by a trustee in bankruptcy on behalf of the corporation's creditors." (citations omitted)).

AHR claims that the appellees conspired with the Fiduciary to file "inflated, collusive and fraudulent confessions of judgment" in favor of North Mill against Wilton's Mt. Joy real estate, on which AHR had a judgment lien. First Am. Compl. at ¶ 65. This allegedly "damage[d AHR] by preventing [it] from recovering monies due and otherwise payable to [AHR]." *Id.* Despite AHR's conclusory allegations that the appellees acted with intent and malice against it, its claims are based entirely on a purported scheme to loot the estate's assets, a scheme that would harm all the estate's creditors, not just AHR. *See In re Total Containment, Inc.*, Bankr. No. 04-13144bf, 2008 WL 682455, at *9 n.11 (E.D. Pa. Mar. 5, 2008) ("It is accepted, however, that the trustee of the insolvent corporation has standing to bring an action under Pennsylvania law for breach of fiduciary duty when corporate assets are wrongfully dissipated." (collecting cases)). As it was the estate that the appellees purportedly directly harmed, it was the estate—not AHR—that was entitled to damages to remedy those harms, and thus, the trustee must bring any such claims.

2. **The Trustee's Statements that the Asserted Claims Do Not Belong to the Estate**

Whether or not a cause of action asserts a claim particularized to an individual or instead is a general claim belonging to the estate is a legal question that the court must decide pursuant to the framework discussed above. Thus, to the extent the Trustee's Affidavit suggests the claims asserted here are particularized claims belonging exclusively to AHR, those suggestions are incorrect as a matter of law and are in no way binding on this court. *See In re Mushroom Transp. Co., Inc.*, 366 B.R. 414, 431 n.14 (Bankr. E.D. Pa. 2007) (dismissing trustee's proposed legal conclusions as "both puzzling and unpersuasive"). Moreover, there is an inherent inconsistency in the trustee's position concerning the fraudulent transfer claim. On the one hand, the trustee represented to the bankruptcy court that the estate's assets included claims for "fraudulent transfer and other causes of action[,] against other persons and entities, including (without limitation) Claims against Gordon Brothers Commercial & Industrial LLC and its affiliates (collectively 'Gordon Brothers') and Ivan Jeffery." Chapter 7 Trustee David A. Eisenberg's Mot. to Abandon Property of the Estate Pursuant to Section 554(b) ("Mot. to Abandon") at ¶ 5, Doc. No. 6-38. But on the other hand, the Trustee's Affidavit represents that the estate has no interest in the fraudulent transfer claims against North Mill and Leisawitz Heller as Gordon Brothers and Jeffery's alleged co-conspirators in that very same purported fraudulent transfer scheme. *See* Trustee's Aff. at ¶ 12 ("I am aware [AHR's] First Amended Complaint reiterated [AHR's] allegations that North Mill had entered into a secret scheme with Jeffery and Leisawitz Heller whereby Jeffery and Leisawitz Heller did not oppose North Mill's filing and confession of an inflated judgment against Wilton . . .."). Likewise, it is perplexing that, accepting AHR's claims as true, the trustee did not identify those claims in the Motion to Abandon. The amended complaint alleges that another of the Debtor's creditors—together with the Debtor's counsel—engaged in a blatant scheme to loot the

estate's assets. Yet the trustee makes no mention of such serious allegations in his description of the estate's claims. He references unspecified "other causes of action," but one would expect a more specific description in a context such as this. This is especially strange because, as Judge FitzSimon noted, the Debtor's Schedules included all the relevant claims against both Leisawitz Heller and North Mill. Bankr. Ct. Op. at 6.

### 3. Whether the Trustee Can Relinquish Claims for the Benefit of a Single Creditor

Alternatively, AHR argues that the trustee relinquished his standing over the claims asserted here. This argument also lacks merit. First, it is not at all clear that the settlement agreement is meant to bestow standing to bring those claims on AHR. The agreement states that it "is not intended to, and does not, release, waive, restrict, limit or otherwise prejudice any rights, claims, or interests (whether known or unknown and whether matured or unmatured) which AHR may have against [any of the parties]." Am. Settlement Agreement by and Between the Chapter 7 Trustee and Artesanias Hacienda Real S.A. de C.V. ("AHR Settlement Agreement") at 8, ¶ 17, Doc. No. 6-43.[20] But that agreement only did not waive any claims that AHR already had the right to bring; it did not create standing that did not otherwise exist. The same is true of the portions of the bankruptcy proceeding transcripts to which AHR cites. *See* Am. AHR Br. at 20 ("[T]he North Mill carve-out agreement is not intended, as I understand it, to impact the litigation [the AHR Litigation] in District Court. So that, in other words, the release by – the releases in the North Mill carve-out agreement don't impact anything[.]" (emphasis omitted) (quoting AHR's counsel's

---

[20] AHR appears to misnumber its citations to the exhibits filed with its original appellate brief, but this appears to be the settlement agreement that it references in its amended brief. *See* Am. AHR Br. at 43 (stating bankruptcy court "So Ordered" settlement agreement in January 2017); AHR Settlement Agreement at p. 9 (handwritten note stating agreement amended January 6, 2017). The Abandonment Order references a March 19, 2018 settlement agreement between AHR and the trustee "resolving [AHR's] objections to the Distribution Motion and Interim Application." Abandonment Order at ECF p. 3. The court did not identify this agreement in the materials provided in the appellate record and so presumes it is irrelevant.

statement in transcript)).[21] Indeed, AHR does not lack standing because a settlement in the bankruptcy proceedings waived any of its claims. Rather, AHR lacks standing because its claims are property of the estate, not any individual creditor.

Nor is it clear whether the bankruptcy court's order resolving the trustee's abandonment motion is meant to provide AHR any relief. The Abandonment Order states that

> "the Wilton Trustee abandon[ed] to *the Debtor* [certain claims including] (without limitation) (a) Claims against Gordon Brothers Commercial & Industrial LLC and its affiliates for fraudulent transfer and related causes of action, and (b) Claims against Ivan Jeffery for breach of fiduciary duty and fraud/fraudulent concealment and related causes of action; provided, however, that the Abandoned Claims do *not* include (and the Wilton Trustee is not abandoning) [certain delineated claims against Leisawitz Heller, Leisawitz Heller attorneys, and Ivan and Wilhemina Jeffery].

Abandonment Order at ¶ 1 (first emphasis added). Although this stipulation appears to abandon claims only to Wilton, elsewhere the Order states that neither the Wilton nor the Jeffery Trustee would interfere with "assertion or pursuit by [AHR] or the Debtor of any of the Abandoned Claims . . . ." *Id.* at ¶ 2. The court need not resolve this discrepancy, however, because it would have been improper for the trustee and the bankruptcy court to allow AHR to assert the claims here on its own behalf in any event.

At least in the Chapter 11 context, the bankruptcy court may authorize a creditors' committee to exercise derivative standing if "a debtor-in-possession unreasonably refuses to pursue an avoidance claim." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel.*

---

[21] The court notes that AHR also filed a request to take judicial notice of the transcript of a May 7, 2019 hearing before the bankruptcy court, in which counsel for the Wilton trustee stated that "[t]he matters in which [AHR's counsel] is representing those adversaries[,] those claims have been abandoned pursuant to a settlement." May 7, 2019 Tr. at 11:3–5. First, counsel's statements in a different proceeding could not change the meaning of the actual agreement, or, more importantly, the order entered pursuant to that agreement. Second, as discussed above, this court is not bound by an incorrect legal conclusion offered by the trustee (or, for that matter, his counsel). Finally, if anything, the transcript demonstrates the interconnectedness of the claims asserted here and the claims the bankruptcy estate is asserting, further undermining AHR's claims that (a) the claims are unrelated to the bankruptcy and (b) the estate never owned the asserted claims. Given that, the court will deny the request to take judicial notice as moot.

*Cybergenics Corp. v. Chinery*, 330 F.3d 548, 553 (3d Cir. 2003) ("*Cybergenics*");[22] *see also In re Rosenblum*, 545 B.R. at 870 (applying *Cybergenics* to grant derivative standing to creditor to pursue fraudulent transfer claim where trustee did not have adequate resources to pursue claims). But AHR does not allege that the trustee unreasonably declined or did not have the resources to bring the fraudulent claims itself. Rather, it claims that the trustee abandoned the asserted claims to it, a scenario that the Third Circuit did not envision in *Cybergenics*.

Equally fatal to AHR's position, it is not seeking to bring the fraudulent transfer claim as a derivative action.[23] Rather, it seeks to bring the claim solely for its own benefit. *See* Am. AHR Br. at 45 ("As the Wilton Trustee and Wilton Estate were so divested of any interest in those claims against Leisawitz Heller by that June 6, 2018 abandonment Order, the Wilton Trustee cannot have standing thereafter to assert those abandoned claims."). But a trustee cannot relinquish claims that belong to the estate for the benefit of a single creditor.[24] To the contrary, "[i]n the Third Circuit

---

[22] It is unclear whether the Third Circuit would extend its holding in *Cybergenics* to the Chapter 7 context. *See Cybergenics*, 330 F.3d at 573 (stating that "trustees are a fixture in Chapter 7 liquidations, but they are exceptional in Chapter 11"); *see also In re Weyandt*, 544 F. App'x 107, 110 (3d Cir. 2013) ("At this time we do not take a position on whether derivative standing may be appropriate in some Chapter 13 contexts . . . ."); *In re Sandenhill, Inc.*, 304 B.R. 692, 694 (E.D. Pa. 2004) ("*Cybergenics*, however, was a Chapter 11 case. While we frankly cannot imagine that the Third Circuit would employ a different rationale in a Chapter 7 matter, Reliance is nevertheless correct that no other Court in this circuit has had occasion to extend the reasoning of *Cybergenics* to an action commenced under Chapter 7."). The Bankruptcy Court for the District of Delaware has extended *Cybergenics* to a Chapter 7 case. *In re Pursuit Capital Mgmt., LLC*, 595 B.R. 631 (Bankr. D. Del. 2018). But at least one court outside the Third Circuit has suggested the Third Circuit's logic would be inapplicable in the Chapter 7 context. *See In re Cooper*, 405 B.R. 801, 804 (N.D. Tex. 2009) ("In a Chapter 7 case—in contrast to a Chapter 11 case—there is no textual basis in the Bankruptcy Code to support the notion that a non-trustee, such as a creditor: (a) has independent standing to pursue chapter 5 avoidance actions or other estate causes of action; or (b) may be granted derivative standing. Moreover, there is generally not any extra-textual, equitable rationale for granting a non-trustee derivative standing."). The court need not decide the issue here, as AHR does not seek to assert derivative claims in any event.

[23] Even if AHR was trying to assert a derivative action here, for the reasons discussed above, it is not clear that that is what the trustee intended or the bankruptcy court approved.

[24] AHR describes *Hoseman v. Weinschneider*, 322 F.3d 468 (7th Cir. 2003), as holding that the "party in interest was entitled to pursue litigation claims which [the] Chapter 7 Trustee relinquished to it in a settlement approved by the bankruptcy court as a compromise under F.R.B.P. Rule 9019." Am. AHR Br. at 40 n.9. But the court resolved that case based on the trustee's prior waiver of claims and covenant not to sue the defendant (who was the debtor, not a creditor, in the bankruptcy proceedings), not any finding that the trustee had abandoned the claims the defendant sought to assert on his own behalf. *Hoseman*, 322 F.3d at 470. If anything, the Seventh Circuit's decision suggests that the court did not consider the issue to be one of abandonment at all:

individual creditors may not assert general claims because *they belong to all creditors*." *In re Our Alchemy, LLC*, 2017 WL 3037445, at *3 (emphasis added) (citing *In re PHP Healthcare Corp.*, 128 F. App'x 839, 844–45 (3d Cir. 2005)).

The Bankruptcy Court for the Western District of Pennsylvania rejected a similar argument from a plaintiff in *In re Mars Builders, Inc.*, 397 B.R. 255 (2008). After holding first that declining to prosecute an action does not amount to abandonment, the court concluded that even if that were not the case, "abandonment of the fraudulent conveyance action that [the plaintiff] now pursues in its Count 3 [wa]s neither something that the Court would permit, nor a vehicle by which [the plaintiff] could ever pursue such an action in this Court." *Id.* at 258. The court noted that allowing the trustee to abandon a claim to a single creditor would be "particularly unpalatable to the Court given that it could then not control litigation over an action *any recovery from which should redound to the entire creditor body of the instant Debtor rather than to just [the plaintiff]*." *Id.* (emphasis added); *see also In re Skinner*, 519 B.R. 613, 622–23 (Bankr. E.D. Pa. 2014) ("A bankruptcy court is empowered to confer derivative standing upon another party only if (1) the trustee failed to bring suit in disregard of her fiduciary duties, and (2) the suit, if successful, *would confer a benefit upon the estate*." (citing *In re Weyandt*, 544 F. App'x at 109)). For all those reasons, the trustee's abandonment of the claims does not mean that AHR can pursue such claims exclusively for its own benefit.[25]

---

[B]ankruptcy trustees regularly make use of releases and waivers in administering bankruptcy estates, and such decisions do not always amount to 'abandonment' of estate property. Rather, the giving of a release in exchange for some action by the debtor . . . as part of a generally beneficial compromise settlement, may be the most efficient and fair means of administering the estate.

*Id.* at 475. Thus, *Hoseman* is inapplicable to the facts here.

[25] The court recognizes that courts outside the Third Circuit have held that individual creditors may be able to pursue fraudulent transfer actions once the trustee abandons them. *In re Vandevort*, Nos. CC-09-1078-MOPAR, CC-09-1086-MOPAR, 2009 WL 7809927, at *6 (B.A.P. 9th Cir. 2009) ("[T]he First Circuit [in *Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311 (1st Cir. 1988)] and the bankruptcy court in [*City Nat'l Bank v. Chabot*, 100 B.R. 18 (Bankr. C.D. Cal. 1989)] correctly held that prepetition standing of a creditor plaintiff is not 'lost' but rather its rights are superseded

### III.    CONCLUSION

Having conducted a thorough review of the underlying facts and relevant caselaw, the court sees no reason to doubt the propriety of the bankruptcy court's holding that no individual creditor, including AHR, has standing to pursue the asserted claims on its own behalf. None of the evidence AHR provided supports a contrary result. Therefore, the court accepts the bankruptcy court's opinion as a recommendation and agrees that the first amended complaint must be dismissed for lack of standing.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

unless and until claims are abandoned under section 554, particularly when the discharge of the debtor has been denied." (footnote omitted)). It is unclear whether the circumstances where such an abandonment action would be appropriate are present here, but regardless, this court disagrees with those decisions for the reasons stated above.